1

2

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

3

Nov 04, 2021

SEAN F. McAVOY, CLERK

4

5
UNITED STATES DISTRICT COURT

6
EASTERN DISTRICT OF WASHINGTON

7
MICHAEL R.,

8
                          Plaintiff,

9
      v.

10
KILOLO KIJAKAZI,
COMMISSIONER OF SOCIAL

11
SECURITY,[1]

12
                          Defendant.

NO:  2:21-CV-00004-LRS

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

13

14
      BEFORE THE COURT are the parties' cross motions for summary

15
judgment.  ECF Nos. 14 and 16.  This matter was submitted for consideration

16
without oral argument.  The Plaintiff is represented by Attorney David L. Lybbert.

17
The Defendant is represented by Special Assistant United States Attorney Michael

18
_____

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9,

19
2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo

20
Kijakazi is substituted for Andrew M. Saul as the defendant in this suit.  No further

21
action need be taken to continue this suit.  *See* 42 U.S.C. § 405(g).

ORDER ~ 1

J. Mullen.  The Court has reviewed the administrative record, the parties'
completed briefing, and is fully informed.  For the reasons discussed below, the
Court **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 16, and
**DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 14.

## JURISDICTION

Plaintiff Michael R.[2] filed for supplemental security income and disability
insurance benefits on April 24, 2018, alleging an onset date of November 1, 2016.
Tr. 278-85.  Benefits were denied initially, Tr. 211-17, and upon reconsideration,
Tr. 220-25.  A hearing before an administrative law judge ("ALJ") was conducted
on November 19, 2019.  Tr. 117-62.  Plaintiff was represented by counsel and
testified at the hearing.  *Id.*  The ALJ denied benefits, Tr. 18-47, and the Appeals
Council denied review.  Tr. 1.  The matter is now before this Court pursuant to 42
U.S.C. §§ 405(g); 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and
transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner.
Only the most pertinent facts are summarized here.

---

[2] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first
name and last initial.

ORDER ~ 2

Plaintiff was 50 years old at the time of the hearing.  Tr. 121.  He graduated from high school, and attended community college.  Tr. 313.  He lives on the same farm property as his mother.  Tr. 124.  Plaintiff has work history as a stock clerk and tree trimmer.  Tr. 151-52.  He testified that he could not work after 2016 because of severe migraines and lack of energy.  Tr. 138.

Plaintiff testified that his life "changed a lot" when he injured his hip in 2019, and at the time of the hearing he could not walk "to the top of the pasture without stopping to take a break" because of the pain.  Tr. 132. He reported that previous to his hip injury he could drive for long periods of time and walk for a mile, but after the injury he could not walk a quarter of a mile without stopping due to pain.  Tr. 132-34.  Plaintiff testified that 60-70 percent of the time, or more than a week per month, his migraines are so severe that he cannot function; he has constant neck discomfort; he cannot crouch or stoop because of hip pain; and his elbow "locks up" on a daily basis.  Tr. 141-46.  He can sit for an hour, stand for ten to fifteen minutes, carry eight pounds in each hand, and he has difficulty bending, twisting, crouching, and kneeling.  Tr. 146-47.

### STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id.* An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's

impairment must be "of such severity that he is not only unable to do his previous

work[,] but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy."

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

    The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§

404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner

considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i),

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(b), 416.920(b).

    If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the

claimant suffers from "any impairment or combination of impairments which

significantly limits [his or her] physical or mental ability to do basic work

activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c),

416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).

If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. Tr. 24. At step two, the ALJ found

that since the alleged onset date of disability, November 1, 2016, Plaintiff has had the following severe impairments: right elbow arthritis, lumbar degenerative disc disease, migraine headaches, and major depressive disorder.  Tr. 25.  Beginning on the established onset date of disability, September 17, 2019, Plaintiff has had the following severe impairments: right hip labrum tear, right elbow arthritis, lumbar degenerative disc disease, migraine headaches, and major depressive disorder.  Tr. 25.  At step three, since November 1, 2016, the ALJ found that Plaintiff has not had an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 27.  The ALJ then found that, prior to September 17, 2019, the date Plaintiff became disabled, Plaintiff had the RFC

> to perform light work as defined as defined in 20 CFR 404.1567(b) and 416.967(b) except the following.  He could occasionally stoop and crouch. He could never balance, crawl, kneel, and climb ramps, stairs, ladders, ropes, and scaffolds.  He was limited to occasional overhead reaching, frequent reaching at or below shoulder level, and frequent handling and fingering.  He could engage in unskilled, repetitive, routine tasks in two-hour increments.  He could have occasional contact with the public, co-workers, and supervisors.  He was likely to be 5% less productive [] than the average worker in the workplace and absent from work four days per year.

Tr. 30  However, the ALJ found that beginning on September 17, 2019, Plaintiff has the RFC

> to perform sedentary work as defined as defined in 20 CFR 404.1567(a) and 416.967(a) except the following.  He can occasionally stoop and crouch.  He can never balance, crawl, kneel, and climb ramps, stairs, ladders, ropes, and scaffolds.  He is limited to occasional overhead reaching, frequent reaching at or below shoulder level, and frequent handling and fingering.  He can engage in unskilled, repetitive, routine tasks in two-hour increments.  He can have occasional contact with the public, co-workers, and supervisors.  He is

likely to be 5% less productive [] than the average worker in the workplace and absent from work four days per year.

Tr. 37.

At step four, the ALJ found that since November 1, 2016, Plaintiff has been unable to perform any past relevant work. Tr. 39. At step five, the ALJ found that prior to September 17, 2019, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, including: small parts assembler, marker/marking clerk, and office helper. Tr. 40-41. However, beginning on September 17, 2019, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are no jobs that exist in significant numbers in the national economy that Plaintiff can perform. Tr. 41. On that basis, the ALJ concluded that Plaintiff was not disabled prior to September 17, 2019, but became disabled on that date and has continued to be disabled through the date of the decision. Tr. 41.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II of the Social Security Act and supplemental security income benefits under Title XVI of the Social Security Act prior to September 17, 2019. ECF No. 14. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly considered Plaintiff's symptom claims;

ORDER ~ 9

2. Whether the ALJ properly considered the medical opinion evidence; and

3. Whether the ALJ erred at step five.

## DISCUSSION

### A. Plaintiff's Symptom Claims

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ

1  must make a credibility determination with findings sufficiently specific to permit

2  the court to conclude that the ALJ did not arbitrarily discredit claimant's

3  testimony.").  "The clear and convincing [evidence] standard is the most

4  demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995,

5  1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920,

6  924 (9th Cir. 2002)).

7       Here, the ALJ found Plaintiff's medically determinable impairments could

8  reasonably be expected to cause some of the alleged symptoms; however,

9  Plaintiff's "statements concerning the intensity, persistence, and limiting effects of

10  these symptoms are not fully supported prior to September 17, 2019" for several

11  reasons.  Tr. 31.

12       *1.  Lack of Objective Evidence*

13       First, the ALJ found that the "relatively benign objective findings and

14  presentations dated prior to September 17, 2019 appear incompatible with the

15  reported frequency and severity of [Plaintiff's] symptoms and limitations prior to

16  September 17, 2019." [3]  Tr. 32.  An ALJ may not discredit a claimant's pain

17

18

19  _____

  [3] Plaintiff does not challenge the ALJ's findings as to his claimed mental health

20  impairments with specificity in his opening brief; thus, the Court confines its

21  analysis to Plaintiff's claimed physical impairments.  *See Carmickle v. Comm'r of*

ORDER ~ 11

testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2). Here, the ALJ acknowledged objective findings of moderate degenerative arthritis in the right elbow; mild to moderate multilevel lumbar facet arthropathy, and mild discogenic spondylosis at T10-L2, L2-3, and L5-S1; and a long history of migraine headaches treated with a variety of medications. Tr. 31, 438, 487, 507, 510, 539, 543-44, 549, 592.

However, the ALJ also set out the medical evidence contradicting Plaintiff's claims of disabling limitations. Tr. 568. For example, the ALJ noted that the February 2016 images of Plaintiff's right elbow showed no joint effusion, normal alignment without fracture or dislocation, and no periarticular soft tissue calcifications. Tr. 32, 510. In addition, despite findings of back pain and tenderness, during examinations prior to September 17, 2019, Plaintiff regularly exhibited full range of motion, no deformity or scoliosis of lumbar or thoracic

---

*Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (Court may decline to address issues not raised with specificity in Plaintiff's opening brief).

ORDER ~ 12

spine, normal/near normal range of motion of upper and lower extremities, 5/5

motor strength of lumbar spine and lower extremities, normal muscle bulk and

tone, intact sensation, intact deep tendon reflexes, and normal gait and station.  Tr.

32, 423-24, 426-27, 441, 453, 456, 471, 474-75, 493-94, 501-02, 513, 522, 526-27,

565, 572, 587, 618.  Finally, the ALJ noted that despite his description of "chronic

severe pain," prior to September 17, 2019 treatment providers consistently noted

that Plaintiff was pleasant, well-appearing, and in no acute distress.  Tr. 32, 423,

426, 440, 453, 456, 471, 474, 487, 493, 498, 501, 513, 522, 526, 571, 582, 586,

610, 616.

        In response, Plaintiff summarizes evidence acknowledged by the ALJ in his

decision, including findings of moderate arthritis in Plaintiff's elbow, a long

treatment history for migraines, and moderate arthritic changes in the lumbar spine.

ECF No. 14 at 17.  Plaintiff also cites March 2017 imaging that noted "no acute

findings" as well as "chronic displaced C7 and T1 spinous process avulsion

fractures)"; and the September 17, 2019 MRI finding of "maceration/degeneration

of the anterolateral labrum and superimposed tears of the labrum," which the Court

notes is the precise date the ALJ found Plaintiff became disabled due to a fall.  Tr.

508.  Finally, in his reply brief, Plaintiff argues that the opinions of Dr. Dinglasan

and Dr. DeGooyer are "based upon objective findings and diagnosed medical

impairments that proclaim severe limitations."  ECF No. 17 at 6.  However, as

discussed below, the ALJ properly found these opinions were not persuasive.

Moreover, the "mere diagnosis of an impairment … is not sufficient to sustain a finding of disability." *Kay v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985). Thus, regardless of evidence that could be considered favorable to Plaintiff, the Court finds it was reasonable for the ALJ to find the severity of Plaintiff's symptom claims before September 17, 2019 was inconsistent with objective findings from the longitudinal record. Tr. 567-69. "[W]here evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld." *Burch*, 400 F.3d at 679. This was a clear and convincing reason, supported by substantial evidence, for the ALJ to discount Plaintiff's symptom claims prior to the established onset date of disability.

### 2. *Failure to Comply with Treatment*

Second, the ALJ briefly noted that in May 2017, Plaintiff complained of migraines but "he admitted that he does not like to be on pain medications. This shows his unwillingness to comply with his treatment plan." Tr. 32. Unexplained, or inadequately explained, failure to seek or comply with treatment may be the basis for rejecting Plaintiff's symptom claims unless there is a showing of a good reason for the failure. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). In support of this finding the ALJ cites the May 2017 report by Plaintiff that "he does not like to be on pain medications"; and his June 2018 report that he stops taking pain medications when they "are not working" and he cannot reach medical providers. Tr. 348, 472. The Court finds that this single report by Plaintiff that he did not *like*

to take pain medication, without further indication as to whether he did, in fact, take pain medication, and another single report that he stopped taking mediation when it was not working and he could not reach his medical provider, do not rise to the level of substantial evidence to discount the entirety of Plaintiff's symptom claims.  As noted by Plaintiff, and acknowledged by the ALJ in the decision, Plaintiff took many prescribed an over-the-counter-medications throughout the relevant adjudicatory period, and the Court notes that at a July 2017 treatment visit, several months after the May 2017 visit cited by the ALJ in support of this finding, Plaintiff was actually advised to "cut down" on over the counter and prescription pain medication.  *See* Tr. 471.  Based on the foregoing, this was not a clear and convincing reason, supported by substantial evidence, for the ALJ to discount Plaintiff's symptom claims.  However, any error is harmless because, as discussed herein, the ALJ's ultimate rejection of Plaintiff's symptom claims was supported by substantial evidence.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

   *3.  Improvement*

   Third, the ALJ noted that the record "shows that [Plaintiff's] physical symptoms are generally well controlled or stable when he is compliant with treatment."  Tr. 32. A favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *see Warre v. Comm'r of Soc. Sec.*

*Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits). In support of this finding, the ALJ cited Plaintiff's denial of migraine symptoms in March 2018; his mother's report in May 2018 that Plaintiff's headaches were "pretty much under control"; Plaintiff's report in June 2018 that he did not have pain, weakness, arthritis, joint swelling, muscle cramps, leg pain, falls, vertigo, or difficulty walking; Plaintiff's report in July 2018 that his headaches had reduced to "episodic"; his treating provider's July 2018 report that his migraines were stable; his report in September 2018 that he had stopped taking medications and his migraines were "more controllable"; and the overall lack of "acute" headache complaints at treatment visits across the medical record. Tr. 32-33 (citing Tr. 416 (reporting no migraines since he got Tragus piercings on both ears), 440, 441 (noting migraine headaches were stable), 516, 608 (noting that Plaintiff tapered off migraine medication after he got his piercing, and reporting only occasional and less intense headaches), 610 (chronic headache has "resolved to episodic migraines and fewer headaches).

Plaintiff initially asserts that "there is no proof of improvement," and then, without specific citation to the record, argues that perhaps the "level of improvement is only that the pain, particularly the migraines, went from severe every day to severe most days." ECF No. 14 at 9-10 (also arguing that a "closer look at the chart notes explain[s] that the migraines went from daily and severe to

'occasional' or 'intermittent' in July 2018"). However, this evidence would seem to further support the ALJ's finding that Plaintiff's migraines had improved at least with regard to frequency. Moreover, regardless of evidence that could be considered favorable to Plaintiff, longitudinal evidence of improvement in Plaintiff's migraines with treatment modalities is inconsistent with his allegations of entirely incapacitating limitations. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld). This was a clear and convincing reason to discredit Plaintiff's symptom claims.

### 4. *Daily Activities*

Fourth, and finally, the ALJ found that Plaintiff's activities of daily living, including work activities and social interaction, are inconsistent with his allegations of severely limiting symptoms. Tr. 34. A claimant need not be utterly incapacitated in order to be eligible for benefits. *Fair*, 885 F.2d at 603; *see also Orn*, 495 F.3d at 639 ("the mere fact that a plaintiff has carried on certain activities . . . does not in any way detract from her credibility as to her overall disability."). Regardless, even where daily activities "suggest some difficulty functioning, they may be grounds for discrediting the [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

In support of this finding, the ALJ cited Plaintiff's reports during the adjudicatory period that he took care of his own personal care, took care of his

mother and her farm animals, did household chores, helped his mother maintain her property, mowed the lawn, did some repair work, played video games, shopped in stores, went to the recycling center regularly, used a checkbook, drove a car, visited his girlfriend, and spent time with his mother and friends.  Tr. 34, 339-43, 353, 624, 676-77, 684-85.  The ALJ also noted that Plaintiff "routinely stated that he walks for exercise four times a week," and "walks to places."  Tr. 34, 341, 458, 539, 563, 570, 580-81, 585.  Finally, the ALJ cited ongoing evidence that Plaintiff has worked as a tree trimmer during the period at issue, and continues to work on his mother's farm.  Tr. 34, 472 (reported working as a tree trimmer), 497, 624 (noting Plaintiff had "high activity tolerance" and is able to mow 2 acres of pasture using a push lawn mower with minimal breaks), 676-77, 684-85.  The ALJ then concluded that "[t]he fact that the impairments did not prevent [Plaintiff] from trimming trees intermittently and working in a farm strongly suggests that the alleged limitations due to back pain, migraine headaches, dizziness, fatigue, and depression were not as severe as alleged."  Tr. 34.

Plaintiff generally argues that "[n]one of the activities outlined by the ALJ as to activities of daily living take up a substantial portion of his day or indicate transferability to a work environment where there is no opportunity to take breaks for rest and medication."  ECF No. 14 at 18 (citing *Fair*, 885 F.2d at 597 ("many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or

take medication").  In his reply brief, Plaintiff further argues, without citation to the record, that the medical records reference "an occupation" but "are unclear whether that is a past occupation or present."  ECF No. 17 at 10.  However, the records cited by the ALJ in support of this finding clearly indicate that Plaintiff was reporting work he was undertaking during the relevant adjudicatory period. *See* Tr. 472, 497, 624, 676-77, 684-85.  Moreover, it was reasonable for the ALJ to conclude that Plaintiff's documented activities, including working as a tree trimmer, managing a farm and maintaining property, taking care of his mother, and shopping in stores, were inconsistent with his allegations of entirely debilitating functional limitations.  *See Molina*, 674 F.3d at 1113 (Plaintiff's activities may be grounds for discrediting Plaintiff's testimony to the extent that they contradict claims of a totally debilitating impairment).  Thus, the Court finds this was a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's symptom claims.

The Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.

**B. Medical Opinions**

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c.

The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Supportability and consistency are explained in the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical

finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

Plaintiff argues the ALJ erroneously considered the opinions of treating providers Catherine Dinglasan, M.D. and Brett DeGooyer, D.O. ECF No. 14 at 11-14.  In October 2019, Dr. Dinglasan opined that Plaintiff can sit for 2-3 hours during an 8-hour workday, stand for 1 hour during an 8-hour workday, and walk for 1 hour during an 8-hour workday.  Tr. 694.  She further opined that Plaintiff can lift up to 10 pounds occasionally; he will need more than scheduled breaks of 10 minutes or more throughout the day; he is likely to miss work or leave early 2-3 days per month due to flare-up of symptoms; and he is likely to experience marked problems with focus and concentration for extended periods.  Tr. 694-96.  Finally,

Dr. Dinglasan noted that these limitations "would be appropriate" from January 1, 2017 to October 2019.  Tr. 694-97.  Dr. DeGooyer concurred with the limitations opined by Dr. Dinglasan.

With regard to Plaintiff's RFC prior to the established onset date of disability, the ALJ found Dr. Dinglasan and Dr. DeGooyer's opinions unpersuasive for several reasons.  Tr. 35-36.  First, as to consistency, the ALJ found the opinions were not persuasive because they were not supported by the record as a whole, including objective findings, treatment notes, evidence of improvement with treatment, and documented daily activities and work activities.[4]  Tr. 35.  Plaintiff

---

[4] Plaintiff also argued, without specific citation from the record, that the ALJ erred by not considering the consistency of the opinions of Dr. Dinglasan and Dr. DeGooyer, as they are "almost identical."  ECF No. 14 at 13.  This argument is inapposite.  Dr. DeGooyer's statement was indistinguishable from Dr. Dinglasan's, as he merely added his signature and "concurred" with Dr. Dinglasan's opinion, with the single added note that Plaintiff "has left hip pathology with a macerated/degenerative labrum, as found by MRI evaluation."  Tr. 704.  For this reason, the ALJ properly considered the opinions jointly, and the Court has done the same.  Moreover, as discussed in detail above, the ALJ properly considered the consistency of these opinions with evidence from the medical and non-medical sources, as per the new regulations.

ORDER ~ 22

argues that the only evidence of improvement was chart notes indicating that

Plaintiff's migraines "went from daily and severe to 'occasional' or 'intermittent'

in July 2018," and that "[t]his is not the 'improvement' that might change or

undermine the statements of two treating sources."  ECF No. 14 at 10, 14 (noting

headache diary kept by Plaintiff's mother indicated that he went from "daily 10/10

headaches to lesser, but still severe headaches").  However, the ALJ cited

consistent evidence of improvement throughout the longitudinal record, including

reports by Plaintiff and his mother that his headaches improved dramatically after

he got Tragus piercings in his ears.  Tr. 35, 416, 427, 441 (migraines noted to be

stable), 608 (reporting occasional migraines at 3-4/10 intensity).  Moreover, while

not addressed by Plaintiff, the ALJ properly relied on objective tests and clinical

findings that were inconsistent with the statements of Dr. Dinglasan and Dr.

DeGooyer, including mild imaging results of lumbar spine; no "acute findings" in

cervical spine imaging; no acute findings in right elbow imaging; and treatment

notes observing "no signs of significant pain," 5/5 motor strength, normal gait,

normal range of motion, intact sensation, normal reflexes, and normal neurologic

examination results.  Tr. 35, 397, 423, 426, 440-41, 447, 453, 456, 471, 474, 493-

94, 501-02, 507-08, 510, 513, 522, 526-27, 571-72, 582, 586-87, 616, 618.

Plaintiff additionally argues that the ALJ "overstated" his level of activity,

and cites his report in July 2018 that he could not prepare his own meals, played

video games only when he did not have a migraine, did "some" repairs, shopped in

ORDER ~ 23

stores only every few weeks, could only walk to "the end of the pasture," and needed his mother's help to feed the animals.  ECF No. 14 at 9 (citing Tr. 339-43).  However, as noted in the ALJ's decision, the record is replete with Plaintiff's reports to treating providers during the relevant adjudicatory period that he worked as a tree trimmer, exercised regularly, and did yard work.  Tr. 35, 437, 472, 497, 539-40, 563, 570, 580-81, 624 (noting high activity tolerance), 684 (did a lot of work on family farm), 688.  Thus, it was reasonable for the ALJ to find Dr. Dinglasan and Dr. DeGooyer's opinions were inconsistent with the longitudinal medical record, including consistent reports of improvement, and Plaintiff's documented daily activities and work activities.

Second, as to supportability, the ALJ noted Dr. Dinglasan and Dr. DeGooyer's "brief" treatment history with Plaintiff, and found "neither of them has declared in his or her Medical Source Statement that the basis for his/her opinion is based on a review of the existing medical record.  Therefore, it is unclear what they based the opinions upon other than the attached reports for the October 2019 imaging of [the] lumbar spine and February 2016 imaging of the right elbow."  Tr. 35-36.  Plaintiff argues that he was treated by Dr. Dinglasan at "6-7 visits spread over 2 years" as opposed to the "only very few occasions" noted by the ALJ.  ECF No. 14 at 13.  However, the Court finds it reasonable for the ALJ to determine that 6-7 visits, spread over the course of the entire adjudicatory period, was as a relatively "brief" treatment history.  *See Tommasetti,* 533 F.3d at

1040 (ALJ may draw inferences logically flowing from evidence); 20 C.F.R. §§

404.1520c(c)(3), 416.920c(c)(3) (relationship with the claimant is a factor in

evaluating the persuasiveness of an opinion, including length of the treatment,

frequency of examinations, purpose of the treatment, extent of the treatment, and

the existence of an examination).  Moreover, and more notably, Plaintiff fails to

challenge the ALJ's finding that Dr. Dinglasan and Dr. DeGooyer's opinions did

not include any objective findings from the "existing medical record" as a basis for

their opinions, aside from one imaging report from February 2016, and another

from October 2019. Tr. 35-36.  As noted by the ALJ, the February 2016 imaging

report of Plaintiff's elbow showed no joint effusion, normal alignment without

fracture or dislocation, and no periarticular soft tissue calcifications; and "[a]s for

the October 2019 spine imaging, the ALJ agreed that Plaintiff was disabled

beginning September 17, 2019."  ECF No. 16 at 14 (citing Tr. 37, 510).  Thus, it

was reasonable for the ALJ to find Dr. Dinglasan and Dr. DeGooyer's opinions

were unpersuasive because they failed to provide the requisite explanation to

support their opinions under the new regulations.

   As a final matter, Plaintiff generally alleges that the ALJ improperly found

the statements of Dr. Dinglasan and Dr. DeGooyer unpersuasive "for the period

from 2017 to 2019, and then persuasive after September 2019"; and that the ALJ

"deemed [the opinions] unsupported for the period of time before September 2019,

when [Plaintiff] turned 50, and then deems them supported as of September 2019."

1    ECF No. 14 at 9, 13.  This argument mischaracterizes the specific findings of the

2    ALJ.  First, as discussed in detail above, the ALJ found that prior to the disability

3    onset date of September 17, 2019, Plaintiff could perform light work, but also

4    assessed a number of non-exertional limitation.  Tr. 30.  However, the ALJ

5    subsequently found that beginning on September 17, 2019, Plaintiff was limited to

6    sedentary work, with the same non-exertional limitations assessed in the RFC prior

7    to the onset date of disability.  Tr. 37.  In support of this finding, the ALJ cited

8    Plaintiff's report in August 2019 that he had increased hip and back pain after a

9    fall; September 17, 2019 imaging that revealed a "new and significant right hip

10   labrum tear"; a September 17, 2019 examination that observed abnormal gait,

11   unsteady balance, significant reduced range of motion of the hip and lumbar spine

12   with pain and tenderness, and positive straight leg test on the left; diagnosis of SI

13   joint dysfunction and left anterior labral degenerative changes, lumbar

14   degenerative changes, and strain of the left gluteus max muscle; and an October

15   2109 MRI scan indicating worsened lumbar degenerative disc disease with

16   multilevel annular tears as well as canal and foraminal stenosis.  Tr. 37 (citing Tr.

17   646, 649-51, 677, 698-99, 705-06).

18          As to the opinions of Dr. Dinglasan and Dr. DeGooyer, the ALJ explicitly

19   found that after the established onset date of disability, their opinion that Plaintiff

20   was restricted to a sedentary exertional level was "consistent with evidence

21   received at the hearing level, including objective findings, and [Plaintiff's]

presented symptoms and restrictions at examinations since the established onset date." Tr. 38, 646, 649-51, 677, 698-99, 705-06.  However, despite Plaintiff's general argument to the contrary, the ALJ went on to find that the non-exertional limitations assessed by Dr. Dinglasan and Dr. DeGooyer remained unpersuasive for the same valid reasons discussed in detail above.  The Court does not discern, nor does Plaintiff offer any specific argument in his opening brief, that the ALJ improperly considered the opinions as of the disability onset date of September 17, 2019.  *See Carmickle*, 533 F.3d at 1161 n.2 (court may decline to address issue not raised with specificity in Plaintiff's briefing).

Based on the foregoing, the Court finds no error in the ALJ's consideration of Dr. Dinglasan and Dr. DeGooyer's opinions.

**C. Step Five**

Finally, Plaintiff argues the ALJ improperly rejected the limitations opined by Dr. Dinglasan and Dr. DeGooyer,[5] and therefore, the ALJ erred at step five by posing an incomplete hypothetical to the vocational expert. ECF No. 11 at 18.

---

[5] Plaintiff also generally argues that the ALJ "failed to include severe mental restrictions." ECF No. 14 at 19.  The Court declines to address this argument because Plaintiff fails to challenge the ALJ's consideration of the mental health opinions, or Plaintiff's claimed mental health symptoms.  *See Carmickle*, 533 F.3d at 1161 n.2).

ORDER ~ 27

1  Plaintiff is correct that "[i]f an ALJ's hypothetical does not reflect all of the

2  claimant's limitations, the expert's testimony has no evidentiary value to support a

3  finding that the claimant can perform jobs in the national economy." *Bray v.*

4  *Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir.2009) (citation and

5  quotation marks omitted).  However, as discussed in detail above, the ALJ's

6  rejection of the medical opinions was supported by the record and free of legal

7  error.  The hypothetical proposed to the vocational expert contained the limitations

8  reasonably identified by the ALJ and supported by substantial evidence in the

9  record.  Thus, the ALJ did not err at step five.

10  ## CONCLUSION

11      A reviewing court should not substitute its assessment of the evidence for

12  the ALJ's.  *Tackett*, 180 F.3d at 1098.  To the contrary, a reviewing court must

13  defer to an ALJ's assessment as long as it is supported by substantial evidence.  42

14  U.S.C. § 405(g).  As discussed in detail above, the ALJ provided clear and

15  convincing reasons to discount Plaintiff's symptom claims, and properly

16  considered the medical opinion evidence.  After review, the Court finds the ALJ's

17  decision is supported by substantial evidence and free of harmful legal error.

18  **ACCORDINGLY, IT IS HEREBY ORDERED:**

19      1.  Plaintiff's Motion for Summary Judgment, ECF No. 14, is **DENIED**.

20      2.  Defendant's Motion for Summary Judgment, ECF No. 16, is

21          **GRANTED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel, enter judgment in favor of the Defendant, and **CLOSE** the file.

**DATED** November 4, 2021.

_____
LONNY R. SUKO
Senior United States District Judge

ORDER ~ 29